BEFORE THE SECOND DIVISION, NOVEMBER 25, 1955

**No. 59494.**—Westfeldt Brothers v. United States, petitions 7165–R, 7166–R, 7167–R, 7168–R, and 7169–R (New Orleans).

RAO, Judge: Several importations of chocolate bars were entered at the port of New Orleans at values less than those found upon final appraisement. Accordingly, and pursuant to the provisions of section 489 of the Tariff Act of 1930, additional duties for undervaluation were assessed and are here sought to be remitted. Individual petitions for remission were filed for each entry but were consolidated for the purposes of trial.

It appears from the record herein that petitioner is a firm of customhouse brokers who entered the involved importations in behalf of the ultimate consignees, the Cuban American Products Co. of New York City, or, and in the case of petition 7165–R only, the Schumacher Co. of Houston, Tex. However, as no owner's declarations were filed in any of the entries, petitioner is, as provided in section 485 (d) of the Tariff Act of 1930, the importer of record.

It further appears that similar merchandise, shipped by the same exporter to Cuban American Products Co., and entered by petitioners, prior to the earliest of the importations at bar, was also the subject of a petition for remission of

additional duties, which petition was granted by this court on June 3, 1954, 32 Cust. Ct. 520, Abstract 58157. The record in that case was received in evidence at the instant trial. The evidence in the incorporated case was summarized in the opinion of the court in the following manner:

The petitioner in this case is the broker, the ultimate consignee being the Cuban American Products Co., with whom the petitioner had served as broker for a number of years. Wallace O. Westfeldt testified that he knew Paul Meyer, the president of the importing company, and had dealt with him relative to the entry in question and that Mr. Meyer has since died. There were several letters admitted in evidence establishing that the petitioner had advised the importer to make sure that the entered value represented the proper value for duty purposes. These letters also indicate that the importer was in constant touch with the shipper and would notify the broker when a change of value was necessary. When entries were made at the invoice values, the witness testified that he notified the importer that he had so entered them in the absence of any advice as to any other value. Later, he advised the importer that the values had been questioned by the appraiser. From the letter in reply from Mr. Meyer, he seemed shocked that values were found other than the invoiced values and requested that the appraisement be withheld until he could substantiate the invoice values.

The witness testified that a conference was held with the appraiser which resulted in the invoice values of one entry being accepted as the proper foreign value but that other evidence was rejected as to the foreign value for the reason that the appraiser had found a higher export value.

An appeal was taken for a reappraisement and considerable documentary evidence was introduced as to both the foreign and export values, but the trial court came to the conclusion that the export value of this particular merchandise was actually higher (Reap. Dec. 7857). Upon an appeal for review of such decision, the reappraisement of the trial court was affirmed, the appellate division holding the export values returned by the appraiser as the value of the merchandise to be the proper values (A. R. D. 10).

Although only one entry was, in fact, involved in the prior case, it is clearly apparent from the record made therein, as well as from the testimony adduced at the present trial, that the evidence given in the first case was not confined to the single entry before the court. It covered the whole period of time that the chocolate bars in question were being imported at New Orleans and revealed the circumstances and attitudes pertaining to all the shipments.

The testimony of Wallace O. Westfeldt, witness for petitioner in the instant case, closely parallels that which he gave at the first trial. He reiterated that he did not know of any actions on the part of Mr. Meyer of Cuban American Products Co., which might indicate that he was misrepresenting the values of the merchandise or had failed to make a proper disclosure of all pertinent facts. Westfeldt stated that, throughout this period, he was in constant communication with Meyer, seeking information as to values; and that Meyer, who maintained a very close connection with the shipper and was fully advised of the market value of this merchandise, agreed to let him know if any additions to the invoice values were necessary. As no information was forthcoming, Westfeldt used the invoice values in making the involved entries. Westfeldt stated further that his constant requests for information and the emphasis he placed upon the need for ascertaining the true values of this merchandise were designed to protect himself and the importer, but at no time did he have any reason to doubt that the values he used were correct. He, himself, had no intention to defraud the revenue of the United States, or to conceal or misrepresent the facts of the case, and knew of no such intention on the part of anyone else in connection with these entries.

For respondent, Joseph A. Fortier, supervising customs agent at the port of New Orleans, testified that he made an investigation in connection with the entry of the merchandise involved in the incorporated case. He had several conver-

sations with Mr. Westfeldt, and the latter voluntarily and gratuitously exhibited to him all the correspondence and documents he had appertaining to these entries. From his conversations and the papers shown to him, he was satisfied that Mr. Westfeldt had made every effort to ascertain the proper dutiable values of the merchandise at bar. However, he had no evidence before him that the Cuban American Products Co. or Mr. Meyer had, prior to the dates of the involved entries, attempted to obtain this information.

We are unable to perceive, in the instant record, any fact or circumstance militating against the conclusion reached in the incorporated case. Much of the evidence in the two cases is substantially the same. That which is new bespeaks of additional efforts on the part of petitioner and the ultimate consignee to ascertain the true values of the imported merchandise and tends to corroborate the finding that petitioner has satisfactorily established its good faith in entering the merchandise at the values which were adopted.

We note in this connection, not only the testimony of respondent's witness, which is, to say the least, favorable to petitioner's position herein, but, as well, the fact that counsel for respondent has advised this court of his desire not to file a brief on behalf of the Government.

In view of the foregoing considerations, we are satisfied that the entries of the merchandise in the cases covered by these petitions were made without any intention to defraud the revenue of the United States, or to conceal or misrepresent the facts of the case, or to deceive the appraiser as to the values of the merchandise. The petitions are, therefore, granted.

Judgment will be entered accordingly.